## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SUNDAY IYOHA** ) | |
| **14205 Water Fowl Way** ) | |
| **Upper Marlboro, MD. 20774** ) | |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | **JURY DEMAND INCLUDED** |
| ) | |
| **THE ARCHITECT OF THE CAPITOL** ) | |
| **c/o General Counsel** ) | |
| **Ford House Office Building H2-265A** ) | |
| **Second and D Streets SW** ) | |
| **Washington, DC 20515** ) | |
| **Defendant** ) | |

### COMPLAINT

Plaintiff brings suit against the Architect of the Capitol because he was passed over for a promotion in violation of the Congressional Accountability Act. Plaintiff is black and of Nigerian descent. In August 2014, the AOC's Chief Information Officer and Deputy Director of the IT Division denied him a selection to a GS-14 Production Management Branch Chief position in September 2014. Shortly before the non-selection, Plaintiff prevailed against the Defendant in litigation at the Office of Compliance because the same Chief Information Officer and Deputy Director discriminated against him by removing him from his previous Help Desk Manager position, in October 2012, because they wanted the IT Help Desk to be staffed and managed by people who spoke with American accents.

### JURISDICTION

1.  Plaintiff invokes the jurisdiction of this Court pursuant to the Congressional Accountability Act of 1995 (2 U.S.C. §1408 (a)), 28 U.S.C. § 1331, and 28 U.S.C. § 1343.

2.      This is an action authorized and instituted pursuant to the Congressional

Accountability Act, (2 U.S.C. § 1301 *et seq.*).

3.      The unlawful employment practices alleged in this Complaint were committed in the

District of Columbia.

4.      Plaintiff is a current employee of Architect of the Capitol.

5.      The Defendant Architect of the Capitol (AOC) is a United States Congressional

Agency located in the District of Columbia.

6.      The Congressional Accountability Act makes it unlawful for the Architect of the

Capitol to discriminate against employees based on, *inter alia*, their race and national

origin.  The Act also makes it unlawful for the AOC to "intimidate, take reprisal

against, or otherwise discriminate against, any covered employee because the covered

employee has opposed any practice made unlawful by [the] Act."

7.      Plaintiff has satisfied all administrative and judicial prerequisites to the institution of

this action. The Plaintiff filed a timely Request for Counseling before the Office of

Compliance raising the violations of the Congressional Accountability Act

complained of here.  Plaintiff engaged in the counseling process and filed a timely

Request for Mediation at the conclusion of the Counseling Period.  Plaintiff files this

suit within the time limits defined by the Act (i.e. after the expiration of 30 days from

the end of the Mediation Period, and before the expiration of 90-days, following the

receipt of the notices of the termination of the Mediation Period).

**FACTS**

8.      Prior to October 5, 2012, Plaintiff was the Information Technology Help Desk

Manager for the Architect of the Capitol.

9.      Plaintiff's performance as Help Desk Manager had been very good. Under the former

        CIO, who left that position in June 2011, Mr. Iyoha earned Outstanding performance

        evaluations in 2009 and 2010, and he received monetary and other recognition.

10.     Jay Wiegmann, who is white and of American Origin, became the new Chief

        Information Officer in June 2011.

11.     A June 2011 survey that the AOC conducted revealed that a large number of

        respondents had positive interactions with the IT Division and that the Help Desk was

        seen as the primary or sole strength of the IT Division.

12.     In August 2011, Mr. Iyoha volunteered to be on the TIGER team that tested iPads and

        iPhones for the AOC so that he could have knowledge of the devices so that he could

        respond to requests for support once the devices were distributed to AOC employees.

        Mr. Weigmann told Billy Louis to keep Mr. Iyoha off of that team because of his

        accent.   Mr. Iyoha spent his own money to purchase an iPad (at a cost of

        approximately $400) so that he could advise AOC employees on the device.

13.     After he took the CIO position, Wiegmann made statements and comments that he

        was annoyed by the fact that the help desk operators did not speak with clear

        American accents and that he wanted to ensure that help desk personnel spoke with

        American accents.

14.     In October 2011, Wiegmann pressured Mr. Iyoha's first line supervisor to order him

        to perform heavy lifting, in the effort to replace computer monitors throughout the

        AOC, despite knowing that Mr. Iyoha has a disability that prevents him from doing

        so.   The supervisor indicated that he felt caught between Wiegmann's demand that

        Plaintiff do the lifting and Plaintiff's inability to participate due to his disability.

15. When Plaintiff complained to Wiegmann and Clark, Wiegmann responded "anyone can get a letter from a doctor."

16. Despite the commendable performance of the Help Desk under Mr. Iyoha's leadership, in February 2012, Mr. Iyoha's rating was downgraded to "Fully Successful" for his 2011 performance.

17. The Defendant's Equal Employment Opportunity and Diversity Programs office investigated Mr. Wiegmann in 2012, but its conclusion was that there was no clear evidence that Mr. Wiegmann had taken any discriminatory personnel actions.

18. Wiegmann pressured the Chief Enterprise Architect to tell him about the allegations that had been made against him at the EEO/DP.

19. On October 5, 2012, Wiegmann and Angela Clark (black, American origin) (then Deputy Director of the IT Division) reorganized the Help Desk and other IT support functions (including telephone and software) so that it fell under the purview of the "Virtual Customer Service Team" (VCST), which was led by Paul Scheff (White, American origin).

20. After the reorganization, all of the Help Desk personnel associated with the VCST spoke with an American accent.

21. Following the October 2012 reorganization of the Help Desk, Wiegmann and Clark reassigned Mr. Iyoha's first line supervisor, who was Persian and spoke with a Persian accent away from his position and to an inventory management position at the Capitol Visitor's Center.

22. Wiegmann and Clark transferred Plaintiff to a Project Manager position in Service Delivery Branch, which is a GS 13 position with no promotion potential.

23.     The other Project Managers in the Service Delivery Branch are GS-14 employees.

24.      In this position, Mr. Iyoha acts as liaison between the AOC and contractors working on Safety, Fire and Environmental Protection projects.    Mr. Iyoha's first line supervisor is now Billy Louis, who is American and speaks with an American accent.

25.     Wiegmann and Clark were aware that Plaintiff did not want to work a Project Manager position, and they placed him in that position deliberately in light of that knowledge, with the hope that his performance would suffer.

26.     Mr. Iyoha did not have a background in Project Management, and he was not given any training or instruction on the position before he was placed into the position. Consequently, his performance ratings have suffered since the time that he was reassigned.

27.     Plaintiff challenged his reassignment in an action at the Office of Compliance. He filed a complaint at the Office of Compliance in February 2013.

28.     Mr. Iyoha's performance evaluation for 2012, which was issued to him in 2013, after Mr. Wiegmann's discriminatory conduct was brought to the Equal Employment and Conciliation Program and at the Office of Compliance, was also only at the "Fully Successful" rating.  Iyoha's mid-term rating for the period, which was issued prior to the time that Wiegmann became the third-line supervisor, was "Outstanding."

29.     On June 7, 2013, following an evidentiary hearing, the Hearing Officer ruled that the AOC discriminated against Mr. Iyoha based on his National Origin when it transferred him away from the Help Desk Manager position.

30.     On December 18, 2013, Mr. Louis disciplined Mr. Iyoha by formal written counseling for being absent despite the fact that Mr. Iyoha had received prior verbal

approval for his absence to attend a funeral.  Mr. Iyoha's only error was inadvertently listing his leave for the wrong day (a Wednesday, rather than the Monday on which a funeral occurred). Mr. Louis stated that next time he would formally mark him as "AWOL."

31.   On or about May 12, 2014, Plaintiff's supervisor, Billy Louis, advised him that his performance rating for the 2013 rating period was going to be at the "Unacceptable" level.

32.   Shortly after Mr. Iyoha protested to Mr. Louis that the lowered evaluation was part of a plan to remove him from working at the AOC, Mr. Louis issued him a "Fully Successful" rating, which indicated that Mr. Iyoha's performance needed improvement in one or more categories.

33.   On or about May 12, 2014, Mr. Louis put Mr. Iyoha on a Performance Improvement Plan without justification.

34.   Mr. Louis has told Mr. Iyoha that he respects Mr. Iyoha and that his negative conduct toward Mr. Iyoha was only because he had to keep his own job.

35.   Mr. Iyoha reasonably interpreted the PIP and Mr. Louis' comment that he was doing what he had to do to keep his job as an overt declaration that the AOC was targeting him for termination, which has put him in heightened fear of termination.

36.   On July 30, 2014, in response to the AOC's petition for review, the Board of the Office of Compliance affirmed the Hearing Officer's finding of National Origin discrimination and confirming Plaintiff's damages and attorney's fee awards.

37.   On August 26, 2014, Mr. Louis – at the direction of Ms. Clark and Wiegmann – rejected Plaintiff's request for travel reimbursement and to use available AOC

training hours to attend a 2-day "Information Technology Service Management" (ITSM) training session that was relevant to a program that the AOC is planning to implement.  Mr. Iyoha paid to travel to the conference out of his own pocket and used annual leave.

38.     On or about August 26 and 27, 2014, Mr. Louis rejected the telework application that Mr. Iyoha had submitted and required Mr. Iyoha to unnecessarily submit an entirely new request.  The AOC then delayed approval of the request by three months.

39.     Even after he was found to have discriminated against Plaintiff, the Architect gave Wiegmann a Leadership award. Likewise, Angela Clark was promoted to the position of Deputy Chief Information Officer / Deputy Director and on information and belief, she was promoted to GS 15.

40.     Mr. Iyoha took both of these actions as affirmative offenses toward him, as if the Architect were personally declaring its support for the very managers that had discriminated against him.

41.     In the fall of 2014, shortly after the Board affirmed Plaintiff's victory on his reassignment case, the AOC's EEO office informed Mr. Iyoha that he would have to recertify for his disability accommodation, and that he would have to do so again in 6 months, even though his doctor has advised that his disability is permanent.

42.     In April 2014, the AOC posted a vacancy announcement for a position entitled "Product Management Branch Chief."

43.     The position was a GS-14 position, which would have been a promotion for Mr. Iyoha.

44.     The primary duties for this position included, among other things, maintaining the

help desk, as well as monitoring and supervising the production environment, which includes server and network administration.

45. Angela Clark is the First-Line Supervisor for the position and Jay Wiegmann is the Second Line Supervisor for the position.

46. Plaintiff had performed the duties of the Production Management Branch Chief on several occasions in an "Acting" capacity.

47. Plaintiff applied for the position, and he was rated qualified and interviewed for the position.

48. Plaintiff sat for an interview for the position in June 2014.

49. Jay Wiegmann and Angela Clark were on the interview panel for the selection; along with them were two other panelists, who did not work in the Information Technology field.

50. Mr. Iyoha was notified that he was not selected for the position on September 23, 2014.

51. Mr. Louis – again at the direction of Clark and Wiegmann – rejected Plaintiff's request for the AOC to send him to the 2015 Help Desk Institute (HDI) Annual Conference.

## COUNT I: DISCRIMINATION AND RETALIATION

52. Plaintiff repeats and reavers each of the foregoing paragraphs as if they were specifically restated here.

53. The Architect of the Capitol violated the Congressional Accountability Act when it denied Plaintiff the GS-14 Production Management Branch Chief position because of his race, national origin and/or prior protected activity.

54.    As a result of the AOC's unlawful conduct, Plaintiff has suffered substantial economic damages, in the form of lost income.

55.    As a result of the AOC's unlawful conduct, Plaintiff has suffered emotional pain and suffering, stress, fear, embarrassment, humiliation, inconvenience and feelings of depression and anxiety. The stress and anxiety has exacerbated Plaintiff's Myofascial Pain Disorder, which has caused Plaintiff considerable physical pain and discomfort.

## COUNT II: HOSTILE WORK ENVIRONMENT

56.    Plaintiff repeats and reavers each of the foregoing paragraphs as if they were specifically restated here.

57.    The conduct described in this complaint were sufficiently severe and/or pervasive to constitute an ongoing hostile work environment, in violation of the Congressional Accountability Act, based on Plaintiff's national origin and/or protected activity.

58.    As a result of the AOC's unlawful conduct, Plaintiff has suffered emotional pain and suffering, stress, fear, embarrassment, humiliation, inconvenience and feelings of depression and anxiety. The stress and anxiety has exacerbated Plaintiff's Myofascial Pain Disorder, which has caused Plaintiff considerable physical pain and discomfort

WHEREFORE, Plaintiff prays that this Court: (i) declare that the employment practices complained of in this Complaint are unlawful in that they violate the Congressional Accountability Act; (ii) permanently enjoin the Defendant and its agents, officers and employees from engaging in all practices found by this Court to be in violation of the Congressional Accountability Act; (iii) order the Defendant to make the Plaintiff whole by paying him any monetary damages proved at trial in addition to compensatory damages in an amount to be

determined at trial; (iv) retain jurisdiction over this action to ensure full compliance with the

Court's orders and require the Defendant to file such reports as the Court deems necessary to

evaluate such compliance; (v) order the Defendant to pay Plaintiff's costs and expenses and

reasonable attorneys' fees in connection with this action; and (vi) grant such other and further

relief to the Plaintiff as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully Submitted,
ALDERMAN, DEVORSETZ & HORA, PLLC


Leslie D. Alderman III (D.C. # 477750)
1025 Connecticut Ave., NW
Suite 615
Washington, DC 20036
Tel: 202-969-8220
Fax: 202-969-8224
lalderman@adhlawfirm.com
Attorney for the Plaintiff